**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

WILLIAMS B. LYONS, et al.

                Plaintiffs,

    **v.**

CITY OF COLUMBUS, et al.,

                Defendants.

**Case No. 2:20-cv-3070**

**Judge James L. Graham**

**Chief Magistrate Judge
Elizabeth Preston Deavers**

**OPINION AND ORDER**

This matter is before the Court for consideration of the Motion for Temporary Restraining Order and/or Preliminary Injunction filed by Plaintiffs William B. Lyons, Connie M. Hammond, Gregory Thomas Pace, Karyn A. Deibel, and Sandra M. Bolzenius (collectively, "Plaintiffs") seeking an order tolling the one-year deadline for filing signatures for a proposed City of Columbus Charter amendment and excusing the related one-instrument filing requirement. (ECF No. 2.)  For the reasons that follow, Plaintiffs' motion is **DENIED**.

## I.    BACKGROUND

Plaintiffs are members of a petition committee for a proposed City Charter amendment entitled, "Community Bill of Rights for Water, Air, and Soil Protection and to Prohibit Fossil Fuel Extraction and Related Activities" (the "proposed Charter amendment" or "Community Bill of Rights"). (*Id.* at PAGEID 32.)  On June 19, 2019, Plaintiffs filed a certified copy of their proposed petition with the Office of the City Clerk. (Lyons Decl. Ex. B, ECF No. 2-1 at 69.)  Plaintiffs' filing triggered the one-year deadline for gathering the signatures required to place their proposed Charter amendment on the November 2020 ballot.  *See* Columbus City Charter § 42-7 ("Petitions for an initiated ordinance or charter amendments shall be filed within one year of filing a certified

copy of the same with the city clerk[.]"); *see also* Ohio Const. Art. XVIII, § 9 (requiring signatures of 10% of the electors of the municipality).

On March 9, 2020, Ohio Governor Mike DeWine responded to the COVID-19 public health crisis by declaring a state of emergency and authorizing Ohio Department of Health Director Amy Acton, M.D., to issue appropriate guidelines to reduce the virus's spread.  As of March 11, 2020, Plaintiffs had gathered almost 9,000 signatures for their ballot initiative. (ECF No. 2 at 32.) On March 12, Dr. Acton issued the first order limiting mass gatherings.  Dr. Acton's March 12 order expressly exempted "gatherings for the purpose of the expression of First Amendment protected speech."  Ohio Dep't Health, Order to Limit and/or Prohibit Mass Gatherings in the State of Ohio ¶ 7 (March 12, 2020).  Plaintiffs suspended their signature gathering campaign that same day, citing health and safety concerns. (Lyons Decl. ¶ 7, ECF No. 2-1 at 57.)

On March 17, 2020, Dr. Acton issued an additional order limiting mass gatherings, but still exempting "First Amendment protected speech,"[1] followed by several stay-at-home orders requiring Ohioans to stay at their place of residence, subject to certain exceptions, and ordering non-essential businesses and operations to cease.

On March 19, 2020, Plaintiffs first contacted Columbus City Council members requesting an extension to the one-year deadline. (Lyons Decl. ¶ 10, ECF No. 2-1 at 58.)  On March 30, 2020, Plaintiffs learned that the City Attorney's office "said there is nothing they can do." (*Id.* at 59.)

On April 27, 2020, Plaintiffs again wrote to the Columbus City Council, this time requesting that Council members put their proposed measure directly on the ballot, rather than subjecting it to the petition process. (Harding Decl. ¶ 3, ECF No. 2-3 at 82.)  On May 1, 2020, City Council President Shannon Hardin responded to Plaintiffs' request stating that he "does not

---

[1] Ohio Dep't Health, Amended Order to Limit and/or Prohibit Mass Gatherings and the Closure of Venues in the State of Ohio ¶ 5 (March 17, 2020).

support Council unilaterally placing the Community Bill of Rights on the ballot this November"

and reiterated Council's commitment "to following the charter." (Bolzenius Decl., Ex. A, ECF No.

2-3 at 84.)

On May 6, 2020, Plaintiffs contacted City Health Commissioner Dr. Mysheika Roberts,

M.D., concerning tolling the deadline. (Lyons Decl., Ex. C, ECF No. 2-1 at 70.)  On May 8, 2020,

Dr. Roberts responded that "the health commissioner [is not allowed] to suspend petition-related

sections of the city charter" and "encourage[d] [Plaintiffs] to continue working with the legislative

branch of the city government to explore solutions to [their] predicament." (*Id.*)

On May 14, 2020, Council President Pro Tempore Elizabeth Brown wrote to Plaintiffs

restating her position "that there are substantial issues with implementing the CCBOR that

continue to persist" due to existing Ohio case law precedent. (Harding Decl., Ex. B, ECF No. 2-2

at 80.)

On June 17, 2020, Plaintiffs filed a verified complaint alleging that enforcement of the

deadline for submitting signatures would violate their rights under the First Amendment to the

United States Constitution.  On the same day, Plaintiffs moved for a temporary restraining order

and preliminary injunction tolling the June 18, 2020 deadline to submit signed petitions on the

proposed Charter amendment and temporarily suspending the associated one-instrument

requirement.  The Court held a preliminary telephone conference pursuant to S.D. Ohio Civ. R.

65.1(a) on June 17.

## II.     STANDARD OF REVIEW

Plaintiffs move this Court, pursuant to Rule 65 of the Federal Rules of Civil Procedure, for

a temporary restraining order and/or preliminary injunction.  Temporary restraining orders and

preliminary injunctions are extraordinary remedies governed by the following considerations: "(1)

whether the movant has a strong likelihood of success on the merits, (2) whether the movant would suffer irreparable injury absent a stay, (3) whether granting the stay would cause substantial harm to others, and (4) whether the public interest would be served by granting the stay." *Ohio Republican Party v. Brunner,* 543 F.3d 357, 361 (6th Cir. 2008); *see also Winter v. Natural Resources Defense Council, Inc.,* 555 U.S. 7, 20 (2008).

"The party seeking the preliminary injunction bears the burden of justifying such relief," including showing likelihood of success and irreparable harm. *McNeilly v. Land,* 684 F.3d 611, 615 (6th Cir. 2012). "Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Med. Examiners,* 225 F.3d 620, 625 (6th Cir. 2000); *accord Jolivette v. Husted,* 694 F.3d 760, 765 (6th Cir. 2012). The movant must further show that "irreparable injury is *likely* in the absence of an injunction." *Winter,* 555 U.S. at 22 (emphasis in original). A mere possibility of injury is not enough. *Id.*

## III.   DISCUSSION

### A.  Preclusive Effect

During the June 17, 2020 telephone conference, the Court noted its concern that the Supreme Court of Ohio's decision in *State ex rel. Bolzenius v. Preisse*, 2018-Ohio-3708, 155 Ohio St. 3d 45, 119 N.E.3d 358 has preclusive effect over the action presently before this Court. Upon further review of that case and Plaintiffs' supplemental brief on the issue, the Court concludes that Plaintiffs do not have a strong likelihood of success on the merits of their case because the *Bolzenius* decision likely has a preclusive effect.

"Collateral estoppel (issue preclusion) prevents parties or their privies from relitigating facts and issues in a subsequent suit that were fully litigated in a prior suit." *Thompson v. Wing*, 70 Ohio St.3d 176, 183, 1994-Ohio-358, 637 N.E.2d 917 (1994). This doctrine applies "when the

fact or issue (1) was actually and directly litigated in the prior action, (2) was passed upon and determined by a court of competent jurisdiction, and (3) when the party against whom collateral estoppel is asserted was a party in privity with a party to the prior action." *Id.*

In *Bolzenius,* the relators sought adoption of a municipal ordinance establishing a "Community Bill of Rights for Water, Soil, and Air Protection," whereby "[a]ny violation of the ordinance would be a first-degree misdemeanor" and "any resident of the City of Columbus" may "enforce the rights and prohibitions of this Community Bill of Rights through an action brought in any court possessing jurisdiction over activities occurring within the City."  119 N.E.3d at 360.

The Supreme Court of Ohio determined that the relators' proposal created new causes of action by authorizing "any resident of the City of Columbus" to "enforce the rights and prohibitions of this Community Bill of Rights through an action brought in any court possessing jurisdiction over activities occurring within the City," and such language exceeded the City's legislative power.  *Id.* at 362 (finding that municipalities lack the power to create a new cause of action).  Because the City of Columbus "clearly lacks the power to enact the proposed ordinance," the Supreme Court of Ohio held that the relators' proposal was an improper ballot measure. *Id.*

In the instant case, Plaintiffs, consisting of all but one of the former relators in the 2018 state court action, present yet another Community Bill of Rights, which likewise contains an enforcement provision authorizing "any resident of the City of Columbus" to "enforce the rights and prohibitions of this amendment through an action brought in any court possessing jurisdiction over activities occurring within the City." (ECF No. 2-1 at 62.)  By proposing new causes of action, Plaintiffs' new proposal appears to contain the same infirmity as the old one, and the Supreme Court of Ohio's previous ruling likely has preclusive effect over the present action.

### B. First Amendment

The Court additionally finds that Plaintiffs have not demonstrated a likelihood of success on the merits of their First Amendment claim.  Application of the City's signature-gathering deadline for petitions to propose charter amendments results in a deadline of June 18, 2020 for Plaintiffs' proposed Community Bill of Rights.  *See* Columbus City Charter § 42-7.  Signatures on the petitions must be affixed in ink.  *See id.* §§ 42-2, 42-10 (providing that the form of petitions and validity of signatures shall be in accordance with state law); Ohio Rev. Code § 3501.38(B) (signatures on election petitions "shall be affixed in ink").

Plaintiffs argue that the City's deadline is unconstitutional as applied because the COVID-19 pandemic and ensuing stay-at-home orders issued by the State of Ohio have made it impossible for them to gather signatures in the final three months of the one-year period.  Plaintiffs halted their signature-gathering efforts on March 12, 2020 after the first COVID-19 order was issued.  Plaintiffs, who had collected about 9,000 signatures up to that point, estimate that they need at least 16,000 signatures to exceed the required 9,870 valid signatures.  Plaintiffs' verified complaint and the declaration of William Lyons state that this lost three-month period was anticipated to have been a productive signature-gathering time.  (Lyons Decl. ¶¶ 8-9, ECF No. 2-1 at 58.)

First Amendment challenges to state and local ballot requirements are reviewed under the *Anderson-Burdick* framework.  *See Schmitt v. LaRose,* 933 F.3d 628, 639 (6th Cir. 2019).  A court weighs "the character and magnitude of the burden the State's rule imposes" on a plaintiff's First Amendment rights against "the interests the State contends justify that burden" and considers "the extent to which the State's concerns make the burden necessary." *Timmons v. Twin Cities Area New Party,* 520 U.S. 351, 358 (1997) (internal quotation marks omitted).  Where the challenged regulation imposes "reasonable nondiscriminatory restrictions[,]" courts apply rational basis

review and "'the State's important regulatory interests are generally sufficient to justify' the restrictions." *Burdick v. Takushi,* 504 U.S. 428, 434 (1992) (quoting *Anderson v. Celebrezze,* 460 U.S. 780, 788, (1983)).  Where the regulation or restriction is severe, "such as exclusion or virtual exclusion from the ballot, strict scrutiny applies." *Thompson v. DeWine,* 959 F.3d 804, 808 (6th Cir. 2020) (per curiam) (citing *Burdick,* 504 U.S. at 434; *Schmitt,* 933 F.3d at 639 ("The hallmark of a severe burden is exclusion or virtual exclusion from the ballot.")).  For cases falling between these two extremes, a court weighs the burden imposed by the regulation against "'the precise interests put forward by the State as justifications for the burden imposed by its rule,' taking into consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights.'" *Burdick,* 504 U.S. at 434 (quoting *Anderson,* 460 U.S. at 789).

Plaintiffs' motion acknowledges that the *Anderson-Burdick* framework should apply.  (*See* ECF No. 2 at 39 ("[T]his Court too should apply *Anderson-Burdick* to Plaintiffs' challenges here."))  Even so, Plaintiffs filed a supplemental brief arguing that the analysis in *Meyer v. Grant,* 486 U.S. 414 (1988), is controlling and more to the point.  (*See* ECF No. 5 at 89–90.)  But the Court finds that *Meyer* is not controlling, because it dealt with a regulation targeting the activity of petition circulators (by making it a felony to pay circulators) and thereby severely burdened the exercise of First Amendment rights.  *See id.* at 428 ("The Colorado statute prohibiting the payment of petition circulators imposes a burden on political expression that the State has failed to justify.").

In contrast, the City Charter's one-year deadline and signature requirements are nondiscriminatory and content-neutral – a point Plaintiffs concede.  (*See* ECF No. 2 at 50.)  Although this counsels against applying strict scrutiny, Plaintiffs argue that strict scrutiny should apply because the combined effect of the City Charter's requirements and the State's stay-at-home orders is that Plaintiffs are virtually excluded from the ballot.

The Court, however, finds that the State's orders imposed no significant burden on Plaintiffs' signature-gathering rights, let alone virtually excluded them from the ballot.  From the very start, Dr. Acton's orders excluded First Amendment speech from regulation.  Dr. Acton's March 12 and 17, 2020 orders limiting mass gatherings expressly exempted "First Amendment protected speech" from their scope: "This Order does not apply to and/or excludes . . . gatherings for the purpose of the expression of First Amendment protected speech . . . ."  Ohio Dep't Health, Order to Limit and/or Prohibit Mass Gatherings in the State of Ohio ¶ 7 (March 12, 2020); Ohio Dep't Health, Amended Order to Limit and/or Prohibit Mass Gatherings and the Closure of Venues in the State of Ohio ¶ 5 (March 17, 2020).  Dr. Acton's March 22 and April 2 stay-at-home orders declared "First Amendment protected speech" to be an essential business or operation which was exempt from the mandate that non-essential businesses and operations cease.  Ohio Dep't Health, Stay At Home Order ¶ 12.g (March 22, 2020); Ohio Dep't Health, Amended Stay At Home Order ¶ 12.g (April 2, 2020).  Finally, Dr. Acton's April 30 Stay Safe Ohio Order, generally prohibiting gatherings of more than ten people, did not apply to "First Amendment protected speech, including petition or referendum circulators."  Ohio Dep't Health, Stay Safe Ohio Order Ohio ¶ 4 (April 30, 2020).  In sum, these orders placed no restrictions on Plaintiffs' signature-gathering activities.

A similar legal challenge was recently addressed and rejected by the Sixth Circuit in *Thompson v. DeWine.*  There, plaintiffs were individuals who were gathering signatures in support of initiatives to amend the Ohio Constitution and propose municipal ordinances.  The *Thompson* plaintiffs argued that their First Amendment rights were violated by the combined effect of Ohio's COVID-19 orders and Ohio's election law requirements of ink signatures on petitions and in-person witnessing by circulators of the affixing of signatures.  The Sixth Circuit, in granting a motion to stay the district court's preliminary injunction pending appeal, held that the *Thompson*

plaintiffs were not likely to prevail on the merits because "Ohio specifically exempted conduct protected by the First Amendment from its stay-at-home orders. . . . [N]one of Ohio's pandemic response regulations changed the status quo on the activities Plaintiffs could engage in to procure signatures for their petitions."  959 F.3d at 809.

To the extent Plaintiffs have faced a new reality since March 2020 – of the difficulty of signature-gathering in this time of pandemic, social distancing and changed behavior of electors – the difficulty is not the type of state-imposed burden on speech that the First Amendment prohibits.

As Sixth Circuit observed in *Thompson*:

Plaintiffs' claim effectively boils down to frustration over failing to procure as many signatures for their petitions (because of social distancing and reduced public crowds) as they would without the pandemic.  But that's not necessarily true.  There's no reason that Plaintiffs can't advertise their initiatives within the bounds of our current situation, such as through social or traditional media inviting interested electors to contact them and bring the petitions to the electors' homes to sign.  Or Plaintiffs could bring their petitions to the public by speaking with electors and witnessing the signatures from a safe distance, and sterilizing writing instruments between signatures.

Moreover, just because procuring signatures is now harder (largely because of a disease beyond the control of the State) doesn't mean that Plaintiffs are *excluded* from the ballot.  And we must remember, First Amendment violations require state action.  U.S. Const. amend. I ("Congress shall make no law...." (emphasis added)); 42 U.S.C. § 1983 ("Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State...." (emphasis added)).  So we cannot hold private citizens' decisions to stay home for their own safety against the State.

959 F.3d at 810 (emphasis in original).

Because the City Charter does no more than impose nondiscriminatory, content-neutral restrictions, it passes constitutional muster.  The deadline and signature requirements serve legitimate and compelling state interests in giving the City and board of elections time to verify signatures, prevent fraud, and review the petition in an orderly fashion.  *See id.* at 810-11 (holding that the State's "compelling and well-established interests in administering its ballot initiative

regulations" outweigh the burden imposed by the State's deadlines and its ink-signature and in-person witnessing requirements).

Thus, the Court finds that Plaintiffs have not demonstrated a likelihood of success on the merits of their First Amendment claim.

## C. Laches

The Court further finds that the doctrine of laches bars Plaintiffs' motion. "It is well established that in election related matters, extreme diligence and promptness are required. When a party fails to exercise diligence in seeking extraordinary relief in an election-related matter, laches may bar the claim." *McClafferty v. Portage Cnty. Bd. of Elections,* 661 F.Supp.2d 826, 839 (N.D. Ohio 2009) (internal quotation marks and citations omitted). The party seeking relief "bears the burden of demonstrating that 'they acted with the requisite diligence.'" *Id.* (quoting *State ex. rel. Demaline v. Cuyahoga. County. Bd. of Elections,* 90 Ohio St. 3d 523, 526, 740 N.E.2d 242 (2000)).

Here, Plaintiffs' own submissions demonstrate that they failed to act with extreme diligence and promptness in filing their motion. Despite being well aware of the one-year deadline to file the required number of signatures via one instrument, Plaintiffs waited until the day before their filing deadline to seek injunctive or declaratory relief. "As a general rule, last-minute injunctions changing election procedures are strongly disfavored." *SEIU Local 1 v. Husted*, 698 F.3d 341, 345 (6th Cir. 2012).

After Dr. Acton issued her March 12, 2020 order limiting mass gatherings, but exempting First Amendment activity, Plaintiffs chose to stop gathering signatures due to health and safety concerns. Plaintiffs sought no legal recourse then and instead pursued legislative remedies the following week. Though Plaintiffs allege the subsequent health orders issued by Dr. Acton

impacted their petitioning efforts, they failed to seek legal recourse during the months of April and May.

During the parties' telephone conference, Plaintiffs' counsel cited concerns about the Court's availability during the pandemic.  Even though the federal courthouse closed to the public on March 23, 2020, the Court's basic functions continued, and the Clerk's Office remained open. *See* General Order 20-05 (March 20, 2020).  Yet Plaintiffs continued pursuing other avenues of relief through the beginning of May and last heard from the legislative branch of the city government on May 14, 2020.  Though their June 18, 2020 deadline was fast approaching, Plaintiffs did not seek legal recourse until more than a month later on June 17, 2020, the day before their deadline.  The Court further notes that such delay prejudices Defendants.  In sum, Plaintiffs failed to act with extreme diligence and promptness, and the doctrine of laches bars their motion.

## IV.    CONCLUSION

The Court thus finds that Plaintiffs have not shown a strong likelihood of success on the merits and that their motion is barred by the doctrine of laches.  The Court further finds that the City and the public have a strong interest in enforcing their lawfully-enacted, nondiscriminatory, election regulations.

Accordingly, Plaintiffs' Motion for Temporary Restraining Order and/or Preliminary Injunction is **DENIED**.

**IT IS SO ORDERED.**

/s/ James L. Graham
JAMES L. GRAHAM
United States District Judge

DATE: June 19, 2020

11